**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JAMES RIVER MULTI-STRATEGY FUND LTD. and S2 DIG INN LLC,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>DIG INN RESTAURANT GROUP LLC,<br><br>　　　　　Defendant. | CIVIL ACTION NO. _____<br><br><br>**COMPLAINT** |

　　　　Plaintiffs James River Multi-Strategy Fund Ltd. and S2 Dig Inn LLC, by and through their attorneys, for their Complaint against defendant Dig Inn Restaurant Group LLC, allege as follows:

**NATURE OF THIS ACTION**

　　　　1.　　This is an action for breach of contract based on a Loan and Security Agreement (the "**Loan Agreement**") dated as of January 8, 2020, by and among James River Multi-Strategy Fund Ltd., as Lender and Collateral Agent for Lenders, and S2 Dig Inn LLC, as Lender (together, "**Lenders**"), and Dig Inn Restaurant Group LLC, as Borrower, and to enforce certain obligations of Borrower in relation thereto. A true and accurate copy of the Loan Agreement is annexed hereto as **Exhibit 1**.

　　　　2.　　Pursuant to the Loan Agreement, Lenders made a loan to Borrower in the aggregate original principal amount of $15,000,000 (the "**Term Loan**"). Lenders bring this action because Borrower has breached its duties under the Loan Agreement and currently owes Lenders the total sum of $16,602,739.73 (as of October 12, 2020), plus accruing interest, attorneys' fees and all other charges due to Lenders under the Loan Agreement.

## PARTIES

3. Plaintiff James River Multi-Strategy Fund Ltd. is an investment company organized under the laws of the Cayman Islands.

4. Plaintiff S2 Dig Inn LLC is an investment company organized in and under the laws of Virginia with its principal place of business in Virginia.

5. Defendant Dig Inn Restaurant Group LLC is a Delaware limited liability company with its principal place of business in New York.

## JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) in that the amount in controversy is in excess of $75,000, exclusive of interest and costs, and there is complete diversity between the parties.

7. The Court also has subject-matter jurisdiction over this action pursuant to Section 13.1 of the Loan Agreement, which provides, in relevant part:

> Any judicial proceeding brought by or against Borrower with respect to any of the Obligations, this Agreement, the Other Documents or any related agreement may be brought in any court of competent jurisdiction in the State of New York, United States of America, and, by execution and delivery of this Agreement, Borrower accepts for itself and in connection with its properties, generally and unconditionally, the non-exclusive jurisdiction of the aforesaid courts, and irrevocably agrees to be bound by any judgment rendered thereby in connection with this Agreement.

Exhibit 1 § 13.1.

8. Venue is proper in this District because a substantial part of the events or omissions giving rise to the claim occurred, and a substantial part of property that is the subject of the action is situated, in this District. Alternatively, venue is proper in this District because the Borrower is subject to this Court's personal jurisdiction.

9.      Venue is also proper in this Court pursuant to Section 13.1 of the Loan Agreement, which provides, in relevant part:

> Borrower waives any objection to jurisdiction and venue of any action instituted hereunder and shall not assert any defense based on lack of jurisdiction or venue or based upon forum non conveniens.

*Id.*

## FACTUAL ALLEGATIONS

10.     On January 8, 2020, Lenders and Borrower entered into the Loan Agreement pursuant to which Lenders loaned Borrower the aggregate amount of $15,000,000. *See id.* at 1 & Schedule 1.2.

11.     The Loan Agreement sets the annual Term Loan Rate of interest on the principal amount of the Term Loan at 12%. *See id.* § 1.2 at 21 (definition of Term Loan Rate); *id.* § 3.1(a).

12.     The Loan Agreement provides for payment of interest on the Term Loan on the last day of each calendar quarter, commencing March 31, 2020. *See id.* § 3.1(c).

13.     In the event of a Specified Event of Default (as defined in the Loan Agreement), the Loan Agreement imposes an annual Default Rate of interest on the principal amount of the Term Loan which results in interest accruing at 15% per annum. *See id.* § 1.2 at 5 (definition of Default Rate); *id.* § 3.1(b).

14.     Borrower failed to make its first interest payment on the Term Loan, which was due March 31, 2020.

15.     As of April 7, 2020, an Event of Default occurred under Section 8.1 of the Loan Agreement as a result of the Borrower's failure to pay interest due on the Term Loan on March 31, 2020 (the "**March EoD**"). *See id.* § 8.1.

16.     The March EoD is also a Specified Event of Default, which includes any Event of Default under Section 8.1. *See id.* § 1.2 at 19 (definition of Specified Event of Default).

17. Under Section 9.1 of the Loan Agreement, upon the occurrence of an uncured Event of Default, at the option of the Lenders, all Obligations become immediately due and payable. *See id.* § 9.1(a).

18. Obligations are defined under the Loan Agreement to include "the obligation to pay principal, interest, expenses, fees, indemnities and other amounts . . . payable by Borrower under this Agreement." *Id.* § 1.2 at 11 (definition of Obligations).

19. On April 8, 2020, Lenders and Agent sent Borrower a Notice of Acceleration and Demand for Payment (the "**Notice of Acceleration**"), which stated that as a result of the March EoD, and in accordance with Section 9.1 of the Loan Agreement, the Lenders were declaring "all of the Obligations, including, without limitation, all principal, interest, prepayment price, expenses and all other amounts due and owing under the Loan Agreement" to be "immediately due and payable" and demanded immediate payment of all Obligations. A true and accurate copy of the Notice of Acceleration is annexed hereto as **Exhibit 2**. *See* Exhibit 2 at 1; Exhibit 1 § 9.1.

20. As also stated in the Notice of Acceleration, under Section 3.1(b) of the Loan Agreement, as a result of the March EoD, a Specified Event of Default (see paragraph 15, *supra*), the Term Loan automatically began accruing interest at the Default Rate. *See* Exhibit 2 at 1; Exhibit 1 § 3.1(b); *id.* § 2.6.

21. Borrower failed to make its second interest payment on the Term Loan, which was due June 30, 2020; this was also an Event of Default under Section 8.1 of the Loan Agreement. *See id.* § 8.1.

22. Borrower failed to make its third interest payment on the Term Loan, which was due September 30, 2020; this was also an Event of Default under Section 8.1 of the Loan Agreement. *See id.* § 8.1.

23. To the present day, Borrower has never made any payments on the Term Loan, whether of interest or principal.

24. In addition, Borrower has failed to meet any of the reporting requirements of Section 7.1 of the Loan Agreement, specifically including Section 7.1(f), which constitutes an additional Event of Default under Section 8.2 of the Loan Agreement.  *See id.* § 7.1; *id.* § 8.2.

25. On October 9, 2020, Lenders and Agent sent Borrower a Notice of the Agent's Intention to Realize Upon the Collateral (the "**Collateral Notice**"), which stated that as a result of the March EoD, together with the Borrower's failure to pay the Obligations in full pursuant to the April 8 Notice, the failure to make any subsequent interest payments on the Term Loan, the failure to make any payments required under Section 2.6 of the Loan Agreement, and the failure to meet the reporting requirements of Section 7.1 of the Loan Agreement, the Loan continues to automatically accrue interest at the Default Rate.  The Borrower was instructed to segregate the Collateral, instruct its own account debtors to make payment to the Agent directly, and to provide account information needed by the Agent to realize upon the Collateral.  A true and accurate copy of the Collateral Notice is annexed hereto as **Exhibit 3**.  *See* Exhibit 3 at 1-2; Exhibit 1 §§ 2.6, 7.1.

26. In accordance with Section 2.2 of the Loan Agreement, the Collateral Notice also instructed the Borrower to execute Term Notes, evidencing the Borrower's indebtedness to the Lenders.  *See* Exhibit 3 at 2; Exhibit 1 § 2.2.

27. As of the present day, the Borrower has failed to respond to the Collateral Notice or take any of the steps demanded in that notice, including the execution of the Term Notes.

28. Section 13.9 of the Loan Agreement requires that the Borrower pay "all reasonable and documented out-of-pocket costs and expenses including reasonable attorneys' fees" incurred

by the Agent and Lenders "in all efforts made to enforce payment of any Obligation [or effect collection of any Collateral]." See Exhibit 1 § 13.9.

29. Pursuant to the Loan Agreement, Borrower owes Lenders the principal sum of $15,000,000, plus Term Rate interest of $1,370,958.90 and Default Rate interest of $231,780,82, for a total of $16,602,739.73 (as of October 12, 2020), plus accruing interest, attorneys' fees and all other charges due to Lenders under the Loan Agreement. A chart of principal and accrued Term Rate and Default Rate interest is annexed hereto as **Exhibit 4**. See Exhibit 4.

## FIRST CLAIM FOR RELIEF
(Breach of Contract)

30. Lenders repeat and reallege the allegations set forth in paragraphs 1 through 29.

31. On January 8, 2020, Lenders made a Term Loan to the Borrower in the aggregate amount of $15,000,000 pursuant to the Loan Agreement.

32. Beginning on March 31, 2020, and continuing thereafter to the present day, Borrower has failed to make interest payments due to Lenders as required by the terms of the Loan Agreement.

33. As of April 7, 2020, and continuing thereafter to the present day, an Event of Default has occurred under the terms of Loan Agreement as a result of Borrower's failure to make interest payments due to Lenders as required by the terms of the Loan Agreement.

34. As a result of that Event of Default, Lenders and Agent sent Borrower a Notice of Acceleration pursuant to the Loan Agreement demanding immediate payment of all principal and interest due, and Borrower has failed to respond to that notice or make any payment at all.

35. Lenders have performed all of their obligations under the Loan Agreement.

36. Pursuant to the Loan Agreement, Borrower owes Lenders the principal sum of $15,000,000, plus Term Rate interest of $1,370,958.90 and Default Rate interest of $231,780,82,

for a total of $16,602,739.73 (as of October 12, 2020), plus accruing interest, attorneys' fees and all other charges due to Lenders under the Loan Agreement.

37. Accordingly, Lenders are entitled to a money judgment against Borrower in the aggregate amount of $16,602,739.73 plus accruing interest, attorneys' fees and all other charges due to Lenders under the Loan Agreement.

## SECOND CLAIM FOR RELIEF
(Attorneys' Fees)

38. Lenders repeat and reallege the allegations set forth in paragraphs 1 through 37.

39. The Loan Agreement requires that the Borrower pay "all reasonable and documented out-of-pocket costs and expenses including reasonable attorneys' fees" incurred by the Agent and Lenders "in all efforts made to enforce payment of any Obligation . . . ."

40. Accordingly, Lenders are entitled to a money judgment against Borrower in an amount to be determined for reasonable and document out-of-pocket costs and expenses including attorneys' fees incurred by the Agent and Lenders in bringing this action and otherwise attempting to collect amounts owed by the Borrower under the Loan Agreement.

## REQUEST FOR RELIEF

Plaintiffs demand judgment against the Defendant, as follows:

    a. A money judgment in favor of each Lender against the Borrower in the aggregate amount of $16,602,739.73, together with any later-accrued and unpaid interest, and all other amounts that are payable under the terms of the Loan Agreement.

    b. All costs, attorneys' fees, and such other and further relief as the Court shall deem just and proper.

Dated: October 14, 2020
      New York, New York

                Respectfully submitted,

                **MORGAN, LEWIS & BOCKIUS LLP**

                By:  */s/ Peter C. Neger*
                      Peter C. Neger
                      Stephen Scotch-Marmo
                      101 Park Avenue
                      New York, NY 10178-0060
                      (212) 309-6000
                      peter.neger@morganlewis.com
                      stephen.scotch-marmo@morganlewis.com

                *Attorneys for Plaintiffs James River Multi-Strategy Fund Ltd., and S2 Dig Inn LLC*